UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| COUNTRY CLUB, INC. | ) | CASE NO. 18-66879 |
| | ) | |
| Debtor, | ) | |
| | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AN ORDER
AUTHORIZING THE DEBTOR TO (A) MAINTAIN EXISTING
BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND
(B) CONTINUE USE OF EXISTING BUSINESS FORMS**

COMES NOW, the above-captioned debtor and debtor in possession (collectively, the "**Debtor**"), by and through their undersigned attorneys, and hereby files this motion (the "**Motion**") for the entry of an order authorizing the debtor to (a) maintain existing bank accounts and cash management system, and (b) continue use of existing business forms. In support thereof, the Debtor respectfully represent as follows:

1.

Debtor filed its petition for relief October 5, 2018 (the "**Petition Date**"). under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in the Debtor's case.

**JURISDICTION**

2.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.

The predicates for the relief requested herein are sections 105(a), 363, 364, 503 and 507 of the Bankruptcy Code, Rules 6003(b) and 6004(h) of the Bankruptcy Rules, and the Office of the United States Trustee for Region 21 Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees (the "**U.S. Trustee Guidelines**").

## BACKGROUND

4.

Debtor owns and operates an adult entertainment club known as Goldrush Show Bar located at 2608 Metropolitan Parkway SW, Atlanta, GA 30315 (the "Business").

5.

Debtor currently has a total of forty-six (46) employees on its payroll, all of whom are essential for operation and maintenance of the Business.

6.

Debtor currently has four (4) bank accounts (listed on Exhibit A attached hereto) at Branch Banking & Trust ("**BB&T**").

## RELIEF REQUESTED

7.

The U.S. Trustee Guidelines require Chapter 11 debtors, among other things, (i) to close all existing bank accounts and open new debtor-in-possession bank accounts, and (ii) to obtain business forms, including checks, which bear the designation "debtor-in-possession," the bankruptcy case number, and the type of account for each debtor-in-possession account.

8.

As more fully set forth below, to avoid disruption to the ordinary and usual cash

management and day-to-day operations of the Debtor, and to ensure an orderly transition into Chapter 11, the Debtor respectfully requests entry of an Order: (i) authorizing them to continue to maintain its existing bank accounts and; (ii) authorizing them to continue to utilize its existing business forms, including checks; and (iii) granting a waiver, to the extent required, from the United States Trustee's guidelines with respect to those requirements identified above.

9.

The Debtor further request that all banks and other financial institutions listed in Exhibit A hereto, (a) be authorized and directed to continue to service and administer the Debtor's bank accounts, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, and ACH payments issued by the Debtor and drawn on each such bank account to the extent the Debtor have sufficient funds in such bank account; and (b) be authorized to rely on the representations of the Debtor as to which account transactions are permitted under the provisions of the Order granting this Motion. The banks and financial institutions subject to the Order shall have no liability to any party for relying on the directions of the Debtor as provided for herein.

**BASIS FOR RELIEF REQUESTED**

10.

Authorizing the Debtor to continue to use its existing bank accounts is essential to a smooth and orderly transition of the Debtor into Chapter 11 and to avoid disruption to its Business. The Debtor's employees would suffer great hardship if the Debtor was compelled to substitute a new debtor-in-possession payroll account for the existing account because many of the Debtor's employees take advantage of direct deposit for payment of its wages and other compensation.  A change to a new payroll account would require that each employee "re-enroll" in the direct deposit program. Therefore, a new payroll account would inevitably lead to delays,

confusion, and disruption of payments that would likely adversely affect employee morale at this critical juncture.

11.

A transition to new debtor-in-possession bank accounts at this time would be disruptive and time-consuming at this critical juncture. By permitting existing accounts to remain open, preserving business continuity, and avoiding the operational and administrative paralysis that closing the accounts and opening new ones would necessarily entail, all parties-in-interest, including the Debtor's employees, vendors, and customers, will be best served, and the Debtor's estate will benefit considerably.

12.

It is critical for the Debtor to be able to continue the existing system during the pendency of this Chapter 11 case. Any disruption to the Debtor's ordinary business affairs at this critical state in the reorganization process could adversely impact its ability to successfully reorganize. Consequently, maintenance of the existing System is in the best interests of all creditors, parties-in-interest, and the Debtor's estate. The Debtor will continue to maintain strict records with respect to all transfers of cash so that it may readily provide an accounting thereof.

13.

By virtue of the nature and scope of the Debtor's business, the number of accounts, and the numerous employees, customers, entertainers, suppliers of goods and services, and others with whom the Debtor transacts business, it is imperative that the Debtor be permitted to continue to use its existing business forms, including checks. A substantial amount of time and expense would be required to print new business forms and stationery and would also likely result in a substantial risk of disruption to the Debtor's ordinary business affairs, which could easily interrupt the payment of wages and salaries and payment for necessary supplies and could

substantially disrupt the smooth relationship enjoyed by the Debtor with its labor force and with its customers.

14.

This Court is authorized to grant the relief requested in this Motion pursuant to Section 105(a) of the Bankruptcy Code, which provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

15.

Bankruptcy courts routinely grant Chapter 11 Debtor's authority to continue using their existing cash management systems and treat such requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, the Chapter 11 cases involves complex financial affairs. In fact, the Eleventh Circuit has specifically held that a debtor's use of its pre-petition "routine cash management system" is "entirely consistent" with the provisions of the Bankruptcy Code. *See In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985). Likewise, in another context, the United States Bankruptcy Court for the District of Delaware has explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993). The Third Circuit has agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993); *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir.

5

1995) (cash management system allows debtor to "administer more efficiently and effectively its financial operations and assets"). While the system used here by Debtor is not a true cash management system, because credit cards are the main means of receipt of income, changing such system would severely and adversely affect the Business of the Debtor.

## CONCLUSION

WHEREFORE, the Debtor respectfully request that this Court:

(a) enter an order Granting the Motion and granting the relief requested herein; and

(b) grant the Debtor such other and further relief as is just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
Cecilia J. Christy, Georgia Bar No. 370092
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**

## EXHIBIT "A'

## Country Club, Inc.

Bank:  BB&T
       200 West Second Street
       Winston-Salem, NC 27101

| | |
|---|---|
| General Operating Account | #6719 |
| Payroll Account | #6328 |
| Door | #5771 |
| Merchant Account | #5763 |